# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| CHRISTOPHER JON BARNETT AND | ) CASE NO. 06-62414 |
| LISA ANN BARNETT, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |
| | ) |

Before the court is the motion to dismiss filed by the United States Trustee (hereafter "UST") on March 20, 2007. Through the motion, the UST alleges, under 11 U.S.C. § 707(b)(3), the totality of the circumstances demonstrate that debtors are abusing the relief provided by chapter 7 and therefore the case should be dismissed. Debtors responded to the motion on April 9, 2007, denied abuse, and argued that they are entitled to chapter 7 relief. The court held a hearing on July 16, 2007, after which the parties submitted briefs in support of their respective positions.

The court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtors filed a joint chapter 7 petition on November 28, 2006. Debtors are residents of Plain Township in Stark County, Ohio. Debtors are both employed and have three children; twin toddlers and an elementary school-aged child.

According to the schedules filed by Debtors, they are purchasing their home, valued at $140,000.00. The property was deeded to Debtors in 1999. Debtors have two mortgages on the property totaling over $144,000.00 and, according to Schedule D, both mortgages were taken out in 2005. In addition to their home, Debtors listed interests in personal property totaling $56,071.70. Approximately $32,000.00 of the personal property is comprised of two exempt 401(k) plans. Another $21,000.00 is attributed to Debtors' two vehicles: a 2002 Dodge Ram 1500, valued at $13,055.00, and a 2002 Chevrolet Venture,

valued at $8,155.00. Based on the information set forth in Schedule D, Debtors purchased the Chevrolet Venture in 2004 and owe $7,900.00 on it; the Dodge Ram was purchased in 2005 and Debtors owe $15,500.00 on it. Thus, Debtors have little to no equity in the vehicles. Debtors have declared all equity in their scheduled assets as exempt.

Debtors included one other secured debt, in the amount of $1,490.90, for furniture. Debtors Statement of Intention indicates an intent to retain all secured debt. Reaffirmation agreements have been executed and filed for the first and second mortgages and the 2002 Chevrolet Venture. Debtors did not schedule any priority debt. Debtors' unsecured debt totals $32,063.00, all of which is identified as credit card debt. It is undisputed that Debtors' debts are primarily consumer in nature.

Debtor Christopher Jon Barnett is a sales manager with Nilodor, where he has been employed for more than six years. Schedule I discloses his gross monthly income is $5,258.45 and his net monthly income is $4,126.21. Debtor Lisa Ann Barnett works in the accounts payable department of Alpha Security Products, where she has also been employed more than six years. Her gross monthly income is $2,833.35; net monthly income is $1,922.72. Thus, Debtors have net earnings of $6,048.93 per month. The following deductions are taken from Debtors gross earnings:

| | | |
|---|---|---|
| Payroll Taxes and Social Security: | $978.62 | (Husband) |
| | 483.95 | (Wife) |
| Insurance: | 153.62 | (Husband) |
| United Way: | 10.01 | (Wife) |
| Flex Account: | 416.67 | (Wife) |

Debtors received 2006 income tax refunds totaling $3,465.00.

Debtors list the following expenses on Schedule J:

| | |
|---|---|
| Rent/Mortgage (including real estate taxes and property insurance) | $ 1,296.73 |
| Electric and heating fuel | 302.00 |
| Water and sewer | 30.00 |
| Telephone | 40.00 |
| Internet | 40.00 |
| Cell Phone | 95.00 |
| Cable | 40.00 |
| Home Maintenance | 100.00 |
| Food | 850.00 |
| Clothing | 100.00 |
| Laundry and dry cleaning | 70.00 |
| Medical and dental | 75.00 |
| Transportation (not including car payments) | 400.00 |
| Recreation | 100.00 |
| Life insurance | 53.00 |
| Auto insurance | 95.00 |
| Car Payment | 320.47 |
| Car Payment | 318.48 |
| Auto maintenance/repairs | 65.00 |

| | |
|---|---:|
| Personal grooming/haircuts | 50.00 |
| Postage/bank charges | 15.00 |
| Misc. Household supplies | 100.00 |
| Pet/vet expenses/supplies | 65.00 |
| Child Care | 1,339.10 |

After payment of all the listed expenses, Debtors state they have a surplus of $89.10 per month.

The means test shows that Debtors' annualized current monthly income is $97,101.60. The median family income for a family of five in Ohio is $73,034.00, so Debtors earn slightly more than $24,000.00 above the median income for a family of five. Additionally, the Statement of Financial Affairs indicates that both Debtors' incomes have consistently increased the past three years. It is uncontested that the means test is correctly calculated and that a presumption of abuse does not arise in this case under 11 U.S.C. § 707(b)(2).

## PARTIES' ARGUMENTS

According to UST, Debtors have the ability to repay a portion of their debt through chapter 13, and therefore their chapter 7 filing, under the totality of the circumstances, is an abuse of the bankruptcy system. UST argues that Debtors are over-withholding taxes, thereby deflating their monthly net income. Further, UST objects to the deduction for the flex account, over $400 per month, then claiming medical and child care expenses, which amounts to "double-dipping." UST also points out that some of the expenses are duplicative or excessive. UST points out that Debtors' filing was not precipitated by a calamity such as a job loss and argues that there is a lack of need for chapter 7 relief by Debtors.

Debtors, in turn, present two arguments. First, Debtors argue that the only standard for determining their ability to pay is the means test, so "passing" the means test under 707(b)(2) conclusively and exclusively establishes an inability to pay (or "neediness" of chapter 7 relief). Debtors opine that the totality of the circumstances test under section 707(b)(3) is reserved for cases involving debtor misconduct, not to re-review the "ability to pay" standard under section 707(b)(2). It is Debtors' position that section 707(b)(2) is a specific statute, governing the ability to pay issue, and that section 707(b)(3), the more general statute, cannot be used to reintroduce the "ability to pay" factor under the "totality of the circumstances" test without consideration of additional factors. Debtors contend that if the "ability to pay" factor is determinative of the 707(b)(3) inquiry, 707(b)(2) is rendered meaningless. Since there is no indication of misconduct by Debtors, and they have "passed" the means test, Debtors argue UST cannot succeed on its 707(b)(3) claim.

## LAW AND ANALYSIS

**I.    707(b)(3)**

Passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter "BAPCPA") brought many changes, including a major overhaul of 11 U.S.C. § 707, the provision governing dismissal or conversion of a chapter 7 case. Dismissal became much less debtor-friendly, as evidenced by the changes to section

707(b)(1).[1] *See also* <u>Eisen v. Thompson</u>, 370 B.R. 762 (N.D. Ohio 2007). Section 707(b)(2) added a new standard for dismissal tied to the "means test." Under 11 U.S.C. § 707(b)(2)(A)(i):

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
>
> > (I)  25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> >
> > (II) $10,000.

Simply, if the formulaic calculations set forth in the means test demonstrate that debtor "passes" the means test, the presumption of abuse does not arise. In this case, there is no argument that Debtors "passed" the means test and therefore no presumption of abuse arose.

In addition to section 707(b)(2), BAPCPA also added 11 U.S.C. § 707(b)(3) which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--
>
> > (A) whether the debtor filed the petition in bad faith; or;
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Since the presumption of abuse does not arise under the means test, UST based its motion on 11 U.S.C. § 707(b)(3). The UST does not argue that Debtors filed this case is bad faith, so the focus of the inquiry is on 707(b)(3)(B). UST argues that the court can undertake a review of the ability to pay as part of the "totality of the circumstances" and does not need independent grounds for finding abuse.

---

[1] Prior to enactment of BAPCPA, dismissal was premised on a showing of "substantial abuse" and there was a presumption in favor of granting the debtor relief. Following enactment, the standard was reduced to mere "abuse" and the presumption in favor of debtor was removed from the statute.

According to Debtors, however, UST cannot now hold up the means test and say "Debtors have the ability to pay." Debtors argue that since they "passed" the means test, and the presumption did not arise, the court cannot rely solely on the exact same factor, the ability to pay, in conducting its section 707(b)(3) analysis.

The court cannot accept Debtors' argument. First, the language of the statute is clearly unsupportive. A statute should be interpreted 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000) (quoting Lake Cumberland Trust, Inc. v. EPA, 954 F.2d 1218, 1222 (6th Cir. 1992)). Section 707(b)(3) specifically encompasses cases in which the presumption did not arise or was rebutted, cases not covered in section (b)(2). As a result, each section is distinct. Dismissal under (b)(2) is appropriate when the presumption of abuse arises, as determined by the means test, and is not rebutted; other cases fall under (b)(3). The means test calculation merely directs which provision is applicable.

Both 707(b)(2) and 707(b)(3) permit review of the means test. Under (b)(2), if the presumption is not in a debtor's favor, it can be rebutted. This necessarily requires an examination of the ability to pay, including a debtor's expenditures. Similarly, (b)(3) opens the door to review of the ability to pay (means test) under the "totality of the circumstances" prong. The statute should not be construed to give the means test more teeth, by way of interpreting the outcome of the means test to be a conclusion.

Under Debtors' argument, the court would never have an opportunity to examine the ability to pay, a key factor in the "totality of the circumstances" analysis. *See* In re Krohn, 886 F.2d 123 (6th Cir. 1989). Clearly, this goes against the plain language of 11 U.S.C. § 707(b)(3)(B) which instructs "the court shall consider . . . the debtor's financial situation." Foreclosing examination of a debtor's ability to pay would virtually render (b)(3)(B) meaningless. There are innumerable fact patterns[2] where the means test could show an inability to pay but the filing could still constitute an abuse of chapter 7. Several courts in this district have concluded that the ability to pay remains a factor for review in a 707(b)(3) totality of the circumstances analysis. *See, e.g.,* In re Simmons, 357 B.R. 480 (Bankr. N.D. Ohio 2006) (Judge Shea-Stonum); In re Mestemaker, 359 B.R. 849 (Bankr. N.D. Ohio 2007) (Judge Whipple); In re Haar, 373 B.R. 493 (Bankr. N.D. Ohio 2007) (Judge Speer); In re Edighoffer, 375 B.R. 789 (Bankr. N.D. Ohio 2007) (Judge Woods); In re Zayas, 2007 WL 987240 (Bankr. N.D. Ohio 2007).

Debtors rely on the Nockerts case for the proposition that, if the ability to pay is a factor for review under section 707(b)(3), it cannot be the sole basis for a finding of abuse. In re Nockerts, 2006 WL 3689465 (Bankr. E.D. Wis. 2006). As ably pointed out by Judge Speer in Haar, Nockerts relied on the standard for dismissal under pre-BAPCPA

---

[2] For example, a debtor could recently have received a promotion not fully realized in the six-month lookback period of the means test, or a debtor could be overextended on secured debt, living above his or her means. Both situations could result in "passing" the means test and showing, under Debtors' argument, an "inability to pay" which does not mirror reality.

law that was not in accord with decisions emanating from the Sixth Circuit Court of Appeals. In this circuit, pre-BAPCPA cases specifically concluded that consideration of the ability to pay factor can be the sole grounds for dismissal. Haar, 373 B.R. at 499 (citing Krohn, 886 F.2d at 126). Thus, the court finds Nockerts to be of little persuasive value.

## CONCLUSION

Under 11 U.S.C. § 707(b)(3), when the presumption of abuse does not arise, or has been rebutted, dismissal may be appropriate when the "totality of the circumstances . . . of debtor's financial situation" indicates abuse. The fact that the presumption of abuse does not arise under section 707(b)(2) has no bearing on the inquiry under section 707(b)(3). Thus, the court can consider a debtor's ability to pay, as well as any other pertinent factors, in making its determination.

An order shall be entered immediately.

/s/ Russ Kendig
_____
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

DEC 1 8 2007

**Service List**:

Debra E. Booher
One Cascade Plaza
1st Floor
Akron, OH 44308

Scott R. Belhorn ust35
Office of the US Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, OH 44114-1240